plaintiff can prove no set of facts in support of his claim, which would entitle him to relief". Considering the Amended Complaint as it is plead, with the facts stated by the Plaintiff is well sufficient to have this Court dismiss the defendants' motion.

## POINT II

### THE INSTANT MOTION SHOULD BE DENIED IN THAT THE PLAINTIFF'S TORT CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW

By way of background, in 1938, Congress passed the Federal Aviation Act ("FAA") which created the Civil Aeronautics Board ("CAB"), (see *American Airlines v. Wolens*, 115 S.Ct. 817, 821 (1995)). The Court in *Torraco v. American Airlines, Inc.* 1996 WL 6560, 4 (N.D.Ill.) (N.D.Ill.,1996), summed up the law regarding preemption as follows:

> The FAA authorized the CAB to regulate entry into the interstate airline industry, the routes airlines could fly and the fares they could charge consumers. The statute contained a savings clause that preserved state common law claims. The 1938 Act was replaced by a similar regulatory scheme in 1958; however, the principal provisions of the statute remained in effect until 1978. In that year, Congress decided to withdraw its pervasive economic regulation of interstate airlines.
>
> It therefore amended the FAA by enacting the ADA "to encourage, develop and attain an air transportation system which relies on competitive market forces to determine the quality, variety and price of air services." Id. (citing H.R.Conf.Rep. No. 1779, 95th Cong., 2d Sess. 53 (1978), reprinted in 1978 U.S.C.C.A.N. 3737, 3773). In order to prevent states from enacting their own economic regulations and thereby frustrating the goal of deregulating the industry, Congress included a preemption provision in the ADA. Id. at 378-79; Wolens, 115 S.Ct. at 821.
>
> Nevertheless, Congress retained the savings clause from the 1938 Act. See 49 U.S.C.App. § 1506. The savings clause reads: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies. The CAB's statements implementing the ADA indicate that the act was concerned solely with economic deregulation, not with displacing state tort law." (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 337 (5th Cir.1995) (en banc)).

To assess whether a tort claim should be preempted, courts in the Southern District have generally applied the three-part test articulated in *Rombom v. United Air Lines, Inc.*, 867 F.Supp.

214 (S.D.N.Y.1994) (Sotomayor, J.) and reiterated in *Ruta v. Delta Airlines, Inc.*, 322 F.Supp.2d 391, 298 (S.D.N.Y.2004).

In *Rombom* the Court held that: "In the absence of controlling Second Circuit precedent, I take an intermediate approach to §1305 preemption questions. Whether or not a claim is preempted under §1305 requires a careful, case-by-case analysis. It is not possible to fashion a bright line rule that clearly delineates permissible and impermissible claims under §1305". Confining the preemption inquiry to the question of whether the tasks implicated in the complaint (e.g., providing boarding instructions, food service, etc.) are services under §1305 is inadequate. The manner in which an in-flight activity is conducted also bears on the question of preemption. See Fenn at 1223 (determination of which state tort actions preempted hinges on specific facts alleged by plaintiff).

Although the case law in this area differs with regard to substantive outcomes, close scrutiny reveals three factors that play an important role in a court's determination of §1305 preemption.

**First, the threshold inquiry under §1305 is to define whether the activity at issue in the claim is an airline service.** Compare Williams at 833 (state claims arising out of airline's refusal to allow passenger to board directly implicate services because the claims immediately arise from denial or inadequately provision of such services) with *Chouest v. American Airlines, Inc.*, 839 F.Supp. 412, 415-16 (E.D.La.1993) (.....) If the court determines that an activity is not an airline service for § 1305 purposes, the preemption inquiry ceases, and the state law claims are actionable.

The threshold question here is whether or not the act of the defendant PILOT removing the Mr. Mutlu from his seat in mid-flight to make it for comfortable for his colleague/co-worker

5

(and possibly more) is an airline service? In *Doricent v. American Airlines, Inc.*, 1993 WL 437670 at 5 (D. Mass. Oct 19, 1993) the facts involved a claims of racial discrimination, assault, battery and intentional infliction of emotional distress. The Court concluded that this type of conduct was not preempted because these claims "have nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service". If the tortious act did not occur during the service in question or the tortious act did not further the provision of a service, then the state tort claim should continue.

Respectfully submitted, this is not a case involving a seating assignments as defendants would want this Court to believe. The facts of this case is very much distinguishable. The plane was in flight and the seat assignment had already been made prior to take-off. The plaintiff was directed by the defendant PILOT to go and "hang out" in the bathroom simply to make it more comfortable for the Defendant FLIGHT ATTENDANT and for no other reason. Hence, the removal of Mr. Mutlu had absolutely nothing to do with airline operations and everything to do with the defendant PILOT "looking out for a the comfort of someone who is his colleague/co-worker (and possibly more). Hence, It is respectfully submitted that the Court should deny the defendants instant motion without any further inquiry.

**Second, if the activity in question implicates a service** (which we respectfully submit that it does not as set forth above), **the court must then determine whether the claim affects the airline service directly or tenuously, remotely, or peripherally**. See *Morales v. Trans World Airlines*, 504 U.S. 374 (1992); citing *Hodges* which has set forth the principal that enforcement of tort duties such as reasonable care will not have "the forbidden significant effect" on airline services. Assuming the act can be classified as an "airline service" it is respectfully submitted that the tort committed on board JETBLUE, by removing Mr. Mutlu from his seat and

imprisoning him in the lavatory during a flight will not have the "forbidden significant effect" on airline services as required, again necessitating the dismissal of the instant motion.

**Third,** (even if the state claim does effect on service) **where a specific state tort claim has only an incidental effect on a service, there is no preemption and the state tort action should continue.** *Bayne v. Adventure Tours USA, Inc.*, 841 F.Supp. 206, 207-08 (N.D.Tex.1994) (citing Fenn at 1223). Where the activity in question directly implicates a service, a court should proceed to the next step of the preemption analysis. The third prong of the preemption inquiry is whether the underlying tortious conduct was reasonably necessary to the provision of the service. In *Curley v. American Airlines, Inc.*, 846 F.Supp. 280, 284 (S.D.N.Y.1994) the Court held that the pilot's "passing on to ground personnel accurate or inaccurate information concerning a passenger's smoking habits ... [does not] refer to services normally expected of flight personnel." Similar to *Curley*, it is respectfully submitted that the defendant PILOT removing Mr. Mutlu from his seat to make it more comfortable for a woman colleague/co-worker (or more, further extent of the relationship not being unknown at this juncture) does not refer to services normally expected of Pilots, necessitating the denial of the instant motion.

Again, as held in Rombom §1305 cannot be construed in a manner that insulates air carriers from tort liability for injuries caused by outrageous conduct that goes beyond the scope of normal aircraft operations. The conduct of removing a passenger from his designated assigned seat, to be forced to sit in a lavatory, with his life placed in peril, is such outrageous conduct that it goes beyond the scope of normal aircraft operations such that §1305 cannot be used to insulate JETBLUE from tort liability necessitating the denial of the instant motion.

As for safety concerns, clearly moving the plaintiff from his seat into the bathroom for the purposes of providing the flight attendant a comfortable ride and having the plaintiff go

7

through two turbulences without a seat belt did not promote any "airline safety". In fact, the exact opposite would have been true. It would have been more prudent had the Defendants rejected the flight attendant's request to moving from the jump-seat to the plaintiff's seat whereby the plaintiff would have completed his journey on an approved seat with the required seatbelt restrain system.

Lastly, many courts have held that state law personal injury actions are never preempted under §1305. In *Stagl v. Delta Air Lines, Inc.*, 849 F.Supp. 179, 182 (E.D.N.Y.1994) the Court held that section 1305 "necessarily exclude[s] an air carrier's common law duty to exercise ordinary care from preemption." *quoting Butcher v. City of Houston*, 813 F.Supp. 515, 517-18 (S.D.Tex.1993). See also *Dudley v. Business Express, Inc.*, 1994 WL 558680 at 5 (D.N.H. October 11, 1994) which held that personal injury actions fall outside the sweep of §1305 citing *O'Hern v. Delta Airlines*, 838 F.Supp. 1264, 1267 (N.D.Ill.1993); *Jamerson v. Atlantic Southeast Airlines, Inc.*, 860 F.Supp. 821, 826 (M.D.Ala.1994); *Union Iberoamericana v. American Airlines, Inc.*, 1994 WL 395329 at 3 (S.D.Fl. July 20, 1994) ("run-of-the-mill negligence and breach of contract claims" are not specifically aimed at regulating rates, routes, or services, and therefore not preempted); also see *Margolis v. United Airlines, Inc.*, 811 F.Supp. 318, 324 (E.D.Mich.1993) where the Court held that section 1305 preemption was not intended to be an insurance policy for air carriers against their own negligence.

## POINT III

### THE INSTANT MOTION SHOULD BE DENIED IN THAT THERE IS A PRIVATE RIGHT OF ACTION UNDER 49 USC SECTION 40127

In *Manfredonia v. American Airlines, Inc.* 68 A.D.2d 131, 416 N.Y.S.2d 286 N.Y.A.D., 1979 the Court concluded as follows:

> The breach of the statute may ground a cause of action for damages arising from injury sustained thereby, if, as outlined in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26: (1) the regulation was intended to protect a particular class of persons; (2) there was an intention to create or deny a private right; (3) the right would be consistent with the goal of the statute; and (4) the cause of action is one traditionally left to State law. Under Federal decisional law the tests prescribed in *Cort* (supra) have been said to be satisfied in the instance of a private right of action for a breach of Federal statutes and regulations governing air carriers (see, e. g., *Gabel v. Hughes Air Corp.*, D.C., 350 F.Supp. 612, 614-615; *Rauch v. United Instruments*, 3 Cir., 548 F.2d 452, 457; *Sanz v. Renton Aviation Inc.*, 9 Cir., 511 F.2d 1027, 1029; *Matter of Paris Air Crash of Mar. 3, 1974*, D.C., 399 F.Supp. 732; *Neiswonger v. Goodyear Tire & Rubber Co.*, 6 Cir., 35 F.2d 761, 763; *Stork v. United States*, 9 Cir., 430 F.2d 1104). The *Cort* rule is compatible with New York law (*Daggett v. Keshner*, 284 App.Div. 733, 738, 134 N.Y.S.2d 524, 529; *Pierce v. International Harvester Co.*, 61 A.D.2d 255, 402 N.Y.S.2d 674.

The *Manfredonia* Court in allowing the Plaintiff's claim to proceed to trial reasoned as follows:

**With regard to the First (1) prong: Was the statute intended to protect a particular class of persons?** The Court concluded that "the statute, is clear, is instinct with a pervasive interest in safety of the passengers ... that an intoxicated passenger may pose a serious threat to the safety of all on the aircraft." Likewise the statutes cited by the Plaintiff, Mr. Mutlu is equally clear with more of a pervasive interest in safety. In fact, the entire premise of the statute is for the sole and exclusive purpose of promoting safety aboard a flight. A passenger that is not assigned a "proper" seat with the "proper" restrain system is not only a danger to himself but to all the other passengers should he be propelled on or about the aircraft.

**With regard to the second (2) prong: "Was there an intention to create or deny a private right?** The *Manfredonia* Court, citing (*Fitzgerald v. Pan Amer. World Airways*, 2 Cir., 229 F.2d 499; *Williams v. Trans World Airlines D.C.*, 369 F.Supp. 797, affd. 2 Cir., 509 F.2d 942 140; *Neiswonger v. Goodyear Tire & Rubber Co.*, 6 Cir., 35 F.2d 761, Supra (injury on

9

ground from low flying aircraft); *Gabel v. Hughes Air Corp.*, D.C., 350 F.Supp. 612, Supra (personal injury from operation of aircraft) held that "the statute is silent as to a denial of a private right. The savings clause, (U.S.C 49 §1506), suggests itself that private enforcement of a remedy is available. Moreover, the Federal courts have construed the statute to provide a privately enforceable right in several areas." Likewise, the statutes cited by the Plaintiff, Mutlu, is also silent as to the denial of a private right. Hence, the savings clause applies here, in the same manner as it was applied in *Manfredonia*.

**With regard to the third (3) prong: "Would the right be consistent with the goal of the statute?"** the *Manfredonia* Court held that "the implication of a right of action is not only consistent with, but also in furtherance of the goal of protecting the safety of passengers and aircraft generally." The *Manfredonia* Court precisely reasoned that when "private persons are afforded the right of action, the compliance with safety regulations by air carriers is encouraged and the regulations strengthened by economic sanctions in favor of those who have been injured by noncompliance. Applying the same reasoning to the *Mutlu* case, clearly no one can argue that affording Mr. Mutlu a right of action would be counterproductive to the intent and purpose of the statute or that it would encourage airlines to take seats away from passengers in the future for the comfort of their off-duty crew thereby placing the safety of all the passengers in peril. To the contrary, as the *Manfredonia* Court so accurately stated, allowing Mr. Mutlu a right of remedy would encourage the airline industry to comply with safety regulations knowing that non-compliance brings with it severe economic sanctions in favor of those who have been injured by noncompliance.

**With regard to the fourth (4) prong: "Is the cause of action one traditionally left to State law?"** the *Manfredonia* Court, citing *Daggert v. Keshner*, 284 App.Div. 733, 134 N.Y.S.2d

10

524, Supra, held that "New York law is... consistent with the construction of the statute as implying a cause of action" and reasoned that "The public policy of New York, exemplified in the dram shop act, is entirely in accord with the objectives of the Federal statute in the endeavor to safeguard the members of the community from preventable harm."

The Plaintiff, Mr. Mutlu has alleged a cause of action for False Imprisonment, Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress, all three of which are a viable cause of action recognized by the State of New York (cite omitted) satisfying the forth (4) prong. As such, the Defendants Instant Motion must be denied in its entirety.

## POINT IV

### IN THE ALTERNATIVE, THE ACTION HEREIN SHOULD BE REVERTED BACK TO STATE COURT TO PROCEED THEREAT

Should the Court accept the defendants' arguments regarding preemption, (albeit in error) then it is respectfully submitted that the action herein should be reverted back to State Court rather than be dismissed. In seeking to dismiss the instant case the Defendants current argument is that "the Plaintiff's first cause of action states no viable federal claim." This proposition is contrary to the arguments the very same defendants made on May 27, 2008 in asking the case to be removed to Federal Court (please see Exhibit A attached to the Declaration of Ismail Sekendiz). At said time the defendants had alleged that substantially all of the Plaintiff's claims arose under the United States Constitution and Federal Statutes. "We conclude that a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331" Id at ___.