UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/09
```

------------------------------x

GOKHAN MUTLU,                  :
                              :
              Plaintiff,       :    08 Civ. 4887 (LAP)
                              :
     -against-                 :    MEMORANDUM AND ORDER
                              :
JETBLUE AIRWAYS CORPORATION,   :
PILOT, true identity unknown,  :
FLIGHT ATTENDANT,              :
True identity unknown,         :
                              :
              Defendants.      :
------------------------------x

LORETTA A. PRESKA, United States District Judge:

     Gokham Mutlu ("Plaintiff") alleges that during a flight
from San Diego to New York operated by JetBlue Airways
("JetBlue") on February 23, 2008, an unnamed pilot and flight
attendant required Plaintiff to surrender his seat to the flight
attendant and relocate himself to an aircraft lavatory.
Plaintiff's Amended Complaint appears to raise federal law and
state law claims.  Construing Plaintiff's Amended Complaint so
as to parcel out cognizable claims, Plaintiff asserts
constitutional claims under both the First and Fourteenth
Amendments of the United States Constitution, a claim under 49
U.S.C. § 40127 (2000), claims under various federal
administrative regulations, and New York law tort claims of
intentional infliction of emotional distress (IIED), negligent

infliction of emotional distress (NIED), negligence, and false
imprisonment.

JetBlue moves to dismiss Plaintiff's Amended Complaint in
its entirety, for failure to state a claim pursuant to Federal
Rule of Civil Procedure 12(b)(6).  The Motion is GRANTED, and
Plaintiff's claims are dismissed with prejudice.

## I.    BACKGROUND

## A.    Factual Allegations

JetBlue is a New York corporation engaged in the business
of operating an airline. (Amended Complaint ("Compl.") ¶¶ 3, 4.)
Plaintiff acquired a "body pass" ticket, in order to travel on a
"stand by" basis, on the condition that there was room on the
aircraft, for a return flight from San Diego to New York
departing on February 23, 2008 at 1:30 p.m. (Compl. ¶¶ 8-13.)
Plaintiff alleges that the airline advised him that there were
no seats available on that flight but he could take a later
flight scheduled to depart at 9:30 p.m. (Compl. ¶¶ 11-13.)
Shortly before check in for the 9:30 p.m. flight, Plaintiff
claims he was advised that the flight was full and that a
JetBlue flight attendant (a named defendant whose true identity
is unknown) had taken the last available seat. (Compl. ¶ 14.)
However, Plaintiff was later told that the flight attendant

2

would take the "jump seat," and Plaintiff was issued a boarding pass and an assigned seat. (Compl. ¶¶ 15, 16.)

Approximately one and one-half hours into the flight to New York, the JetBlue pilot (also a named defendant whose true identity is unknown) called Plaintiff to the front of the plane and told him that he would have to forfeit his seat to the flight attendant. (Compl. ¶ 17.) The reason given was that the flight attendant wanted to be more comfortable. (Compl. ¶ 18.) The pilot also advised Plaintiff that, because the jump seat was reserved for airline personnel only, he should go "hang out" in the lavatory. (Compl. ¶¶ 20, 22.) Plaintiff alleges that he experienced embarrassment and humiliation because everyone on the plane looked at him. (Compl. ¶¶ 24, 25.) He alleges that the pilot then became angry and took a harsher tone with him advising him that he should just be grateful for being onboard. (Compl. ¶ 26.)

Plaintiff went into the lavatory, locked the door, and sat on the toilet seat with no seatbelt. (Compl. ¶¶ 28-30.) After one hour, it seemed to the Plaintiff that a passenger was trying to open the door, and the Plaintiff stepped out. (Compl. ¶ 29.) He saw two flight attendants at their station and he advised them that he was in the lavatory because the Pilot had ordered him to stay there for the duration of the flight. (Compl. ¶ 29.) Plaintiff alleges that they laughed at him and said, "yeah we

3

know, just go back in there," and Plaintiff reentered the lavatory. (Compl. ¶¶ 29-30.)

When the aircraft experienced turbulence and an announcement alerted passengers to return to their seats and buckle their seatbelts, Plaintiff allegedly experienced tremendous fear. (Compl. ¶ 30.) Thereafter, a flight attendant knocked on the lavatory door and advised Plaintiff that more turbulence was expected and that he should return to his original seat. (Compl. ¶ 32.) At the end of the flight, when the pilot asked Plaintiff if everything was okay, Plaintiff told the pilot that he was made to sit in the lavatory for over three hours. (Compl. ¶¶ 36, 37.) The pilot allegedly told Plaintiff that he was lucky to be let on the plane at all. (Compl. ¶ 38.)

## B.  Procedural Background

Plaintiff initiated this action in the Supreme Court of the State of New York, County of New York on May 9, 2008. Subsequently, Defendants removed the action to this Court. On June 9, 2008, JetBlue filed a motion for a more definite statement pursuant to Federal Rule of Civil Procedure Rule 12(e), and on June 12, 2008, the Court ordered Plaintiff to advise the Court whether he intended to amend his Complaint. On June 16, 2008, the Court ordered that no further amendments would be permitted after the filing of an amended complaint on

4

or before June 26, 2008. On June 17, 2008, Plaintiff filed his
Amended Complaint.

## II. DISCUSSION

### A. Jurisdiction

Jurisdiction is proper under 28 U.S.C. § 1331 because
Plaintiff asserts claims that arise under the Constitution and
law of the United States. Plaintiff also asserts claims that
arise under New York law; for the reasons set forth below, those
claims are properly before this Court pursuant to 28 U.S.C.
§ 1367(c)(3).

### B. Standard of Review

In deciding a Rule 12(b)(6) motion, a court must accept all
of the complaint's factual allegations as true and draw all
reasonable inferences in the plaintiff's favor. See Illiano v.
Mineola Union Free School Dist., 585 F. Supp. 2d 341, 349
(E.D.N.Y. 2008). However, the court need not accept as true
"[l]egal conclusions, deductions or opinions couched as factual
allegations." In re NYSE Specialists Sec. Litig., 503 F.3d 89,
95 (2d Cir. 2007).

To withstand such a motion to dismiss, the complaint need
only allege "enough facts to state a claim to relief that is
plausible on its face." Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570 (2007).  Under this "flexible 'plausibility standard,' a pleader is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  The "appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (internal quotation marks omitted).

The Court of Appeals has also held that "in order to survive a motion to dismiss under the plausibility standard of [Twombly], a conclusory allegation concerning some elements of a plaintiff's claims might need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement." See Iqbal, 490 F.3d at 158 (citing Fed. R. Civ. P. 12(e)).  Relief for a motion to dismiss 12(b)(6) will be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

C.    Analysis

Defendant JetBlue moves to dismiss the Amended Complaint on the grounds that Plaintiff fails to allege or show state action for purposes of the First and the Fourteenth Amendments claims,

there is no private right of action under 49 U.S.C. § 40127(a)
or the federal administrative regulations raised by Plaintiff,
and Plaintiff fails to plead necessary elements of his state
tort claims.

JetBlue also moves to dismiss on the basis that Plaintiff
merely affixes state law tort labels to federal law claims to
provide an "end run" around federal laws that provide no private
right of action. Although there is truth to the Defendants'
assertion that Plaintiff's Amended Complaint is rife with
"tacking ill-fitting state law labels onto essentially federal
law claims, rendering it nearly impossible to identify (a) what
claims Plaintiff is asserting, (b) the legal bases for his
claims, and (c) the legal standards he is proceeding under,"
(see Def.'s Mem. 3), I have attempted to discern the federal law
claims from the state law claims, in order to construe the
Amended Complaint liberally. Cf. Drake v. Delta Airlines, Inc.,
147 F.3d 169, 170 (2d Cir. 1998).

1.    Federal Law Claims

a.    Constitutional Claims

Plaintiff asserts his claims of constitutional violations
in general terms. He alleges that JetBlue's employees acted
"under color and pretense of the law (FAA, CFR)," to deprive him
of his "rights, privileges, and immunities secured to the

7

Plaintiff by the First and Fourteenth Amendments to the
Constitution of the United States and the Laws of the United
States of America and the Laws, Rules, Regulations, Statues
[sic] and Ordinances of the City and State of New York." (See
Compl. ¶ 53.)  Plaintiff also alleges that he was subject to "a
pattern of conduct consisting of illegal discrimination,
harassment, in denial of rights, privileges and immunities
guaranteed . . . by the Constitution of the United States, the
City and State of New York." (See Compl. ¶ 54.)  In their
briefings, Plaintiff and JetBlue treat these allegations as
constituting claims under the First Amendment and the Fourteenth
Amendment (see Def.'s Mem. 9; Pl.'s Opp'n Mem. 17); I also
construe the claims as such.

Claims for violations of the First and Fourteenth
Amendments require a showing of injury from a state actor or
private party operating under color of state law. Phillips v.
Sage Colleges, 83 Fed. Appx. 340, 341 (2d Cir. 2003).  A private
party's involvement in an activity merely where the state has a
strong interest is insufficient to establish state action. Id.
Rather, a plaintiff may show state action by pointing to facts
tending to prove that state has ceded to a private actor
governmental functions that the state would otherwise be
obligated to perform, see Kia P. v. McIntyre, 235 F.3d 749 757
(2d Cir. 2000), or the state has effectively assumed control of

8

a private institution's policies and operations, see Lebron v. National R.R. Passenger Corp., 513 U.S. 374, 400 (1995).

This case is distinguishable from Drake v. Delta Air Lines, Inc., 147 F.3d 169 (2d Cir. 1998). There, the Court of Appeals determined that an airline was acting as a "state actor" for Fourth Amendment purposes where the airline was conducting FAA-mandated drug testing and sample collection upon its employees. See id. at 170-72 & n.3. In the present case, there is no allegation tending to show that JetBlue was acting under authority of the state or that it was performing a state function. And JetBlue is "not transformed into a government actor by [FAA] regulation." Anderson v. USAir, Inc., 818 F.2d 49, 56 (D.C. Cir. 1987) (citations omitted). Because Defendants were not acting under color of state law, Plaintiff's constitutional claims are dismissed with prejudice.

b.    Claim Asserted Under 49 U.S.C. § 40127

I construe Plaintiff's claim alleging "intentional and/or negligent infliction of emotional distress under 49 U.S.C. § 40127" as a claim based on the theory that § 40127 confers a private cause of action.[1] (See Compl. ¶¶ 42-43.) Section 40127(a) states: "An air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the

---

[1] I consider Plaintiff's IIED and NIED claims separately, infra.

basis of race, color, national origin, religion, sex, or ancestry."

Few courts have considered whether § 40127(a) confers a right of action. See, e.g., Cerqueira v. Am. Airlines, Inc., 520 F.3d 1, 12 n.11 (1st Cir. 2008) (not reaching the question of whether there is an implied right of action under § 40127); Malik v. Cont'l Airlines, No. 08-50373, 2008 WL 4851207, at *4 (5th Cir. Nov. 10, 2008) (noting that plaintiff asserted a claim under § 40127, but not addressing whether it confers a right of action); Puckett v. Northwest Airlines, 131 F. Supp. 2d 379, 383 n.3 (E.D.N.Y. 2001) (passing the question of whether § 40127 confers a right of action because plaintiff claimed none of the bases for discrimination listed therein). One court has rejected the theory. See Elnajjar v. Northwest Airlines, Civ.A. H-04-680 & H-04-681, 2005 WL 1949545, at *6 (S.D. Tex. Aug. 15, 2005) (holding plaintiff failed to establish the existence of a right of action under § 40127).

The Supreme Court addressed right of action determinations in Cort v. Ash, 42 U.S. 66, 78 (1975), and outlined a four-factor test for determining when a statute confers a private cause of action: (1) legislative intent, (2) the consistency of the remedy with the underlying purposes of the legislative scheme, (3) whether the plaintiff was a member of the class for whose benefit the statute was enacted, and (4) whether the cause

10

of action is one traditionally relegated to state law. However, the Court now tends to focus only on whether Congress intended to create a right of action when it passed a given statute and the other Ash factors are treated as merely indicia of Congressional intent. See Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 575-76 (1979); see also Thompson v. Thompson, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) ("[W]e effectively overruled the Cort v. Ash analysis in [Touche Ross], . . . converting one of its four factors (congressional intent) into the determinative factor." (emphasis in original)). Accordingly, "'each of [the four] factors is [not] entitled to equal weight,'" and "'[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.'" Spinner v. Verbridge, 125 F. Supp. 2d 45, 48 (E.D.N.Y. 2000) (quoting Touche Ross, 442 U.S. at 575) (alternations in original).

As such, whether a private cause of action exists depends primarily on the "text and structure" of the statute itself. Alexander v. Sandoval, 532 U.S. 275, 288 (2001). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" Id. at 289 (quoting California v. Sierra Club, 451 U.S. 287, 294 (1981)). Furthermore, "[t]he judicial task is to interpret the statute

Congress has passed to determine whether it displays an intent
to create not just a private right but also a private remedy."
Sandoval, 532 U.S. at 286.

Plaintiff has not pointed this Court to any authority
compelling the conclusion that § 40127(a) confers a right of
action. Nor has Plaintiff provided a proper right of action
analysis. The language of § 40127(a) indeed seems to speak in
terms of regulating actions by air carriers, not in terms of
providing individual rights or remedies. Accordingly, I find
that Plaintiff has not met his burden of showing that § 40127
confers a right of action, so as to overcome JetBlue's Motion to
Dismiss.[2]

---

[2] Additionally, Plaintiff's claim fails because Plaintiff did not
plead any of the § 40127 bases on which he claims to have been
discriminated. In Malik v. Continental Airlines, the Court of
Appeals for the Fifth Circuit affirmed the dismissal of a
plaintiff's discrimination claim under § 40127 because she
failed to plead facts showing intentional discrimination on the
basis of race, color, or national origin. No. 08-50373, 2008 WL
4851207, at *4 (5th Cir. Nov. 10, 2008) (holding that the
plaintiff's "complaint falls well short of [the Twombly]
standard" because it "simply alleg[ed] that, to her knowledge,
she was the only Indian-secular Muslim on a flight" and that
"she was singled out, subjected to different standards, deprived
of her property, and denied compensation because she was a
member of a racial, ethnic, and religious group." (internal
quotation marks omitted)); see also Elnajjar, 2005 WL 1949545,
at *6 (recognizing that even if the plaintiffs had established a
private right of action under § 40127, the plaintiffs failed to
plead they were discriminated against based on race).

    Here, Plaintiff did not identify his race, religion, color,
creed, or any other basis for discrimination in his Amended
Complaint. In considering a Rule 12(b)(6) motion, a court is
required to look only to the allegations in the *(continued . . .)*

12

c.   Claims Asserted Under Federal Regulations

Plaintiff alleges that JetBlue violated 49 C.F.R.

§ 374.101, which states:   "No motor common carrier of passengers

subject to 49 U.S.C. Subtitle IV, Part B shall operate a motor

vehicle in interstate or foreign commerce on which the seating

of passengers is based upon race, color, creed, or national

origin." (See Compl. ¶¶ 44.)   Subtitle IV, Part B refers to

"motor carriers, water carriers, brokers, and freight

forwarders."   Plaintiff also alleges that JetBlue violated 14

C.F.R. §§ 121.311 and 125.211.   Theses regulations essentially

state that no person may operate an airplane unless there are

available seats or berths for each person on board and an

approved safety belt for each person. (See Compl. ¶¶ 59-60, 65-

67.)

Defendants first argue that § 374.101 is irrelevant because

an airline does not provide road-based motor vehicle

transportation services. (Def.'s Mem. 5 n.4.)   Plaintiff does

_____

(. . . continued) operative complaint. See Roth v. Jennings, 489
F.3d 499, 509 (2d Cir. 2007); see also Forsberg v. Always
Consulting, Inc., 06-CV-13488, 2008 WL 5449003, at *10 (S.D.N.Y.
Dec. 31, 2008) (noting that a court "may only consider the
information contained in the four corners of a complaint,
including 'any written instrument attached to it as an exhibit
or any statements or documents incorporated in it by reference,'
or any other document that the complaint 'relies heavily upon .
. . render[ing] the document integral to the complaint.'"
(quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d
Cir. 2002))).   Accordingly, Plaintiff's claim must be dismissed.

13

not dispute this point in his Opposition Memorandum and points to no authority to the contrary. Accordingly, I find that irrespective of whether § 374.101 confers a private cause of action, the regulation is inapplicable here.

As to §§ 121.311 and 125.211, Defendants argues that they provide no private cause of action. As noted above, whether these federal regulations permit a right of action is a question of Congressional intent and "specifically whether the statutes enforced by the regulations at issue, spanning various chapters of the Federal Aviation Act in Title 49, display Congress' intent to 'create not just a private right but also a private remedy.'" Weiss v. El Al Israel Airlines, 433 F. Supp. 2d 361, 371 (S.D.N.Y. 2006) (quoting Alexander v. Sandoval, 532 U.S. 275, 286-92 (2001)).

The sole enforcement mechanism intended for a violation of the FAA in general is a civil action commenced by the Secretary of Transportation or Attorney General. See Weiss, 433 F. Supp. 2d at 371 (citing 49 U.S.C. § 46101 (which permits individuals to file complaints with the Secretary of Transportation alleging violations of the FAA, and the Secretary to investigate such complaints)); § 46106 (stating that the Secretary of Transportation may bring a civil action to enforce the FAA); § 46107 (stating that the Attorney General may bring a civil action upon request by the Secretary of Transportation); § 46301

14

(specifying civil penalties for violations of various provisions
of the FAA and the regulations promulgated thereunder)); see
also Drake, 147 F.3d at 171-72 (finding no implied right of
action for alleged violations of FAA-mandated drug testing rules
because an employee can seek redress through administrative
avenues, such as filing a complaint with the Secretary of
Transportation under 49 U.S.C. § 46101).

The above cited administrative enforcement mechanisms
indicate that Congress did not intend to provide a private cause
of action for violations of any of the FAA federal regulations.
I also note that 49 U.S.C. § 46108 expressly permits an
"interested person" to commence a civil action to enforce
section 41101(a)(1) only, which permits air carriers to provide
transportation only if they hold a valid certificate authorizing
such activity. See Bonano v. E. Caribbean Airline Corp., 365
F.3d 81, 85 (1st Cir. 2004). In Weiss, Judge Lynch cited Bonano
and explained that § 46108 is relevant to the extent that
Congress's decision to create an express cause of action in that
section further reinforces the conclusion that Congress intended
no implied cause of action for violation of the other provisions
of the FAA or regulations promulgated thereunder, where such
deliberate language is absent. See Weiss, 433 F. Supp. 2d at 370
n.11.  Accordingly, I conclude that no private cause of action

is available to Plaintiff under the federal regulations raised here.[3]

## 2. State Law Claims

Jurisdiction was originally proper because Plaintiff asserted claims arising under the Constitution and laws of the United States. See 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367(c)(3), so long as there was first a proper basis for subject matter jurisdiction, "the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996). Because I have dismissed Plaintiff's federal law claims for failure to state claims upon which relief may be granted and I am now familiar with the facts alleged in Plaintiff's Complaint, in the interests of judicial economy and convenience I will address Plaintiff's state law claims. Id. at 1191. I also take into consideration in deciding to exercise supplemental jurisdiction Plaintiff's unlikelihood of success as to his state law claims. See Waterman v. Transport Workers' Union Local 100, 8 F. Supp.

---

[3] The sole case relied on by Plaintiff, Manfredonia v. American Airlines, Inc., 416 N.Y.S.2d 286 (N.Y. App. Div. 1979), is unavailing because it interprets 14 C.F.R. § 121.575, a regulation irrelevant to this case.

16

2d 363, 367 & n.2 (S.D.N.Y. 1998).  As such, I will address

Plaintiff's state law claims on the merits.[4]  Plaintiff and

Defendants agree that New York law governs Plaintiff's claims.

a.    Intentional Infliction of Emotional Distress (IIED) Claim

Plaintiff fails to set forth all of the necessary elements

of a New York IIED claim.  In asserting an IIED claim, a

plaintiff must plead four elements:  (1) extreme and outrageous

conduct;  (2) intent to cause, or disregard of a substantial

probability of causing severe emotional distress;  (3) a causal

connection between the outrageous conduct and injury;  and (4)

severe emotional distress. See Howell v. New York Post Co., 612

N.E.2d 699, 702 (N.Y. 1993); see also Stuto v. Fleishman, 164

F.3d 820, 827 (2d Cir. 1999).  Furthermore, "[l]iability has

---

[4] In addition, I have considered Defendants' argument that
Plaintiff's state law claims are preempted by the Airline
Deregulation Act. See 49 U.S.C. § 41713(b)(1) (2000) ("[A] state
. . . may not enact or enforce a law, regulation, or other
provision having the force and effect of law related to a price,
route, or service of an air carrier . . . .").  This section
preempts all state law claims that have a connection with or
reference to an airline's offered services. See Morales v. Trans
World Airlines, Inc., 504 U.S. 374, 383-85 (1992); see also Air
Transport Ass'n of America, Inc. v. Cuomo, 520 F.3d 218, 223 (2d
Cir. 2008).  "Whether or not a claim is preempted under
§ [41713(b)(1)] requires a careful, case-by-case analysis.  It
is not possible to fashion a bright line rule that clearly
delineates permissible and impermissible claims under
§ [41713(b)(1)]." Rombom v. United Air Lines, Inc., 867 F. Supp.
214, 221 (S.D.N.Y. 1994).  I find that a preemption analysis is
unnecessary here because Plaintiff's state law claims fail as a
matter of law, as explained infra.

been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Howell, 612 N.E.2d at 702-03; see also Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985).

IIED claims that overcome a Rule 12(b)(6) motion typically plead "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." Stuto, 164 F.3d at 828; see also Macey v. NYSEG, 436 N.Y.S.2d 389, 391-92 (N.Y. App. Div. 1981) (allowing an IIED claim to proceed alleging that an electric company refused to restore plaintiff's electricity unless she separated from her husband); Flamm v. Van Nierop, 291 N.Y.S.2d 189, 190-91 (N.Y. Sup. Ct. 1968) (allowing an IIED claim to proceed where plaintiff alleged the defendant made recurring physical threats in person and with a vehicle against plaintiff and placed harassing phone calls).

I conclude that unlike the conduct described in the above cited cases, the conduct Plaintiff complains of here is insufficient as a matter of law to qualify as outrageous, extreme, or atrocious conduct that went beyond all possible bounds of decency. Unprofessional or rude customer service does

18

not rise to the level of outrageousness conduct required to sustain an IIED claim. Accordingly, Plaintiff's claim for IIED is dismissed.

### b. Negligent Infliction of Emotional Distress (NIED) Claim

Plaintiff has also failed to plead necessary elements of his NIED claim. An element of the New York NIED claim is conduct that "was so outrageous and extreme as to support a claim for emotional distress," which is the same standard used in intentional infliction of emotional distress cases. Acquista v. New York Life Ins. Co., 730 N.Y.S.2d 272, 279 (N.Y. App. Div. 2001); Dillon v. City of New York, 704 N.Y.S.2d 1, 7 (N.Y. App. Div. 1999) ("We have applied the same standard to both the intentional and negligence theories of emotional distress . . . [which] must be clearly alleged for the pleadings to survive dismissal."). Further, "the parameters of this tort are extremely narrow." Nevin v. Citibank, N.A., 107 F. Supp. 2d 333, 346 (S.D.N.Y. 2000). New York courts have recognized it in very limited circumstances, namely, when a plaintiff suffered physical trauma or was caused to fear for his physical safety, when a plaintiff was within the "zone of danger" when an immediate family member was killed or injured, when a plaintiff was wrongly notified of a near relative's death, or when a deceased family member's remains were improperly handled. Id.

Often NIED claims "involve[] an objective inquiry turning on whether a plaintiff's physical safety actually was endangered, not a subjective evaluation dependent on the plaintiff's state of mind." Campoverde v. Sony Pictures Entertainment, 01 Civ. 7775, 2002 WL 31163804, at *14 (S.D.N.Y. Sept. 30, 2002) (quoting St. John v. Rein Teen Tours, Inc., No. 99 Civ. 2537, 2000 WL 977685, at *3 (S.D.N.Y. July 17, 2000)); see Ben-Zvi v. Kronish Lieb Weiner & Hellman, 718 N.Y.S.2d 328, 329 (N.Y. Sup. Ct. 2000) (affirming dismissal of NIED for failure to state a claim because plaintiff did not allege that "defendants' conduct unreasonably and directly endangered his physical safety").

Here, Plaintiff failed to allege that the Defendants committed extreme or outrageous conduct comparable to the above cited cases. Nor has Plaintiff alleged that he "suffered an unreasonable endangerment to his physical safety." Campoverde, 2002 WL 31163804, at *14. Accordingly, this claim must be dismissed.

c. Negligence Claims

Plaintiff's negligence claims are particularly ambiguous. Plaintiff apparently alleges that JeBlue was careless and reckless in hiring, investigating its employees' backgrounds, training, supervising, and retaining its employees. (Compl.

20

¶¶ 71-75.) Plaintiff also alleges that JetBlue violated its own rules, regulations, and the Passenger's Bill of Rights, with regard to the manner in which it treated him (Compl. ¶¶ 39-40) and that the defendants were negligent in removing him from his assigned seat, causing him to suffer mental pain (Compl. ¶¶ 76-79).

"'[T]o recover damages for injuries sustained because an employer has hired or retained an incompetent employee, a plaintiff must establish a duty owed by the defendant employer, a breach of that duty by the defendant employer, and damages proximately caused by the defendant employer's breach.'" Perry v. Burger King Corp., 924 F. Supp. 548, 552 (S.D.N.Y. 1996) (quoting Vincenzino v. Calvosa, 572 N.Y.S.2d 611, 612 (N.Y. Sup. Ct. 1991)). A defendant employer may be responsible for the tort of an employee against a third party "when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." Detone v. Bullit Courier Serv., Inc., 528 N.Y.S.2d 575, 576 (N.Y. Sup. Ct. 1988). Under New York law, negligent hiring claims tend to require that the plaintiff suffered significant physical injury; claims of negligent hiring involving mere harassment are generally not actionable. Utility Metal Research, Inc. v. Coleman, 08 Civ. 1463, 2008 WL 850456, at *9 (E.D.N.Y. Mar. 28, 2008); Monte v. Ernst & Young,

21

330 F. Supp. 2d 350, 365 (S.D.N.Y. 2004); see also White v. Hampton Mgmt. Co., 827 N.Y.S.2d 120, 244 (N.Y. App. Div. 2006).

Plaintiff alleges no duty or breach on the part of JetBlue, no knowledge on the part of JetBlue that its employees had a propensity to commit the sort of behavior of which Plaintiff now complains, and no injury to himself, other than his alleged emotional distress. To the extent Plaintiff asserts any other negligence theories, they are unmeritorious. Accordingly, Plaintiff's negligence claim(s) are dismissed.

### d. False and/or Wrongful Imprisonment

Plaintiff alleges that "the Defendants falsely and wrongfully imprisoned [him] to the lavatory of the aircraft without his consent and over his objection." (Compl. ¶ 81.) Under New York law, to establish a claim for false imprisonment, a plaintiff must allege that (1) the defendant intended to confine the plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Broughton v. State, 373 N.Y.S.2d 87, 93 (N.Y. Sup. Ct. 1975); see also King v. Crossland Sav. Bank, 111 F.3d 251, 256 (2d Cir. 1997); Campoverde v. Sony Pictures Entertainment, 01 Civ. 7775, 2002 WL 31163804, at *8 (S.D.N.Y. Sept. 30, 2002). "A false imprisonment claim requires a prima facie showing of

22

actual confinement or threatening conduct." Campoverde, 2002 WL 31163804 at *8 (internal quotation marks omitted); see also Lipin v. Hunt, 538 F. Supp. 2d 590, 602 (S.D.N.Y. 2008) (dismissing false imprisonment claim where plaintiff was not actually confined or threatened).

To illustrate, in Albury v. J.P. Morgan Chase, a plaintiff's false imprisonment claim was dismissed because the defendant did not verbally or physically communicate an intent to restrain the plaintiff from leaving his office. 03 Civ. 2007, 2005 WL 746440, at *14 (S.D.N.Y. Mar. 31, 2005). Similarly, in Cellamare v. Millbank, Tweed, Hadley & McCloy LLP, a plaintiff's claim was dismissed where the defendant never told plaintiff that "she was not free to leave and there [was] no allegation that [defendant] forced her to stay." 03 Civ. 0039, 2003 WL 22937683, at *2 (E.D.N.Y. Dec. 2, 2003).

The present case is no different. Taking Plaintiff's allegations as true, the pilot merely advised Plaintiff that he should "hang out" in the lavatory. Plaintiff did not plead that the defendants intended to or actually confined him in the lavatory. Nor was Plaintiff's exit from the lavatory guarded by threat or force. The Amended Complaint states that the Plaintiff himself "quietly stepped into the bathroom, closed the door and locked it." (Compl. ¶ 28.) And even if the pilot "took

a harsh tone" with Plaintiff, the pilot never threatened
Plaintiff or forced him into the lavatory.

Accordingly, Plaintiff's claim of false imprisonment fails
as a matter of law.

III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss
[dkt. no. 12] is granted and Plaintiff's claims are dismissed
with prejudice.   The Clerk of the Court shall mark this action
closed and all pending motions denied as moot.

SO ORDERED

Dated:   March 31, 2009
         New York, New York

_____
LORETTA A. PRESKA, U.S.D.J.

24