UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GOKHAN MUTLU,

                        Plaintiff,

        - against -                                                    08 CV 4887 (LAP)

JETBLUE AIRWAYS CORPORATION,
PILOT, true identity unknown, and
FLIGHT ATTENDANT, true identity unknown,

                        Defendants.
------------------------------------------------------------------------X

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL

Defendant JetBlue Airways Corporation ("JetBlue"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to the Motion of Plaintiff Gokhan Mutlu ("Mutlu" or "Plaintiff"), pursuant to Federal Rule of Appellate Procedure 4(a)(5),[1] for an extension of time to allow Plaintiff to file an untimely notice of appeal. Because Plaintiff has failed to show either "good cause" or "excusable neglect" such as would excuse his failure to file a Notice of Appeal pursuant to the timetable established under Federal Rule of Appellate Procedure 4(a), Plaintiff's Motion should be denied.

## PROCEDURAL HISTORY

This action was commenced by Plaintiff, through counsel, in New York Supreme Court, New York County, on or about April 30, 2008. On May 27, 2008, JetBlue removed this action to this Court pursuant to its "federal question" and "civil rights" jurisdiction. A second action, essentially identical to this action, was commenced by Plaintiff, through the same counsel, against the same parties, in New York Supreme Court, New York County, on or about May 30,

---

[1] While Plaintiff's motion is styled as a motion "pursuant to Federal Rules of Appellate Procedure 5(A)," JetBlue understands the motion to in fact seek relief under Federal Rule of Appellate Procedure 4(a)(5).

2008.  After JetBlue's requests for the dismissal of this second action went unheeded by Plaintiff's counsel, JetBlue removed the second action to this Court on June 10, 2008.  *See* 1:08-cv-05312-LAP.  Plaintiff later dismissed this second action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), at JetBlue's request.

On June 9, 2008, JetBlue filed a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).  The Court on June 12, 2008, ordered Plaintiff to advise on or before June 19, 2008, whether he intended to amend his Complaint, and if so, to do so prior to June 26, 2008, after which no further amendments would be allowed.  On June 16, 2008, Plaintiff's counsel advised that, while he "believe[s] the Complaint clearly sets forth the Plaintiff's claims, in a good faith attempt to resolve the matter without further taking the Court's time," he would amend the Complaint on or before the June 26 deadline.  By Order dated June 16, 2008, the Court once again advised Plaintiff that "[n]o further amendments will be permitted" after the filing of Plaintiff's Amended Complaint.  On June 17, Plaintiff filed and served his Amended Complaint.

On July 7, 2008, JetBlue moved to dismiss Plaintiff's Amended Complaint, in its entirety and without further opportunity to replead, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a viable claim under federal or state law.  By Memorandum and Order dated and filed March 31, 2009 (the "Dismissal Order"), this Court granted JetBlue's motion, and dismissed Plaintiff's claims in their entirety, with prejudice.  Judgment entered on March 31, 2009 (*see* Docket No. 24), and transmission thereof by the clerk's office was accompanied by a standard "Notice of Right to Appeal" document setting forth applicable appellate deadlines.  ECF docket entries indicate that the Court's Dismissal Order, and its Judgment with accompanying Notice of Right to Appeal, were electronically transmitted to Plaintiff's counsel Akin & Smith LLC on March 31, 2009.  No Notice of Appeal was timely filed by Plaintiff or his counsel.

## ARGUMENT

### PLAINTIFF HAS SHOWN NEITHER "GOOD CAUSE" NOR "EXCUSABLE NEGLECT" SUCH AS COULD JUSTIFY HIS FAILURE TO TIMELY FILE A NOTICE OF APPEAL

Federal Rule of Appellate Procedure 4(a)(1) requires notices of appeal in civil cases to be filed with the district clerk "within 30 days after the judgment or order appealed from is entered." Compliance with Fed. R. App. P. 4(a) is "mandatory and jurisdictional," and "[t]he power of the federal courts to extend this time limitation is severely circumscribed." *Silvanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 363-4 (2d Cir. 2003) (*quoting Endicott Johnson Corp. v. Liberty Mutual Ins. Co.*, 116 F.3d 53, 55-6 (2d Cir. 1997); *see also United States ex rel. McAllan v. City of New York*, 248 F.3d 48 (2d Cir. 2001) ("The Fed. R. App. P. 4 time requirements for taking an appeal have been treated as especially rigid, and a federal court's authority to extend or suspend those limits is narrowly limited."); *Goris v. Goord*, 2006 WL 2850198 (S.D.N.Y. 2006) ("The very purpose and spirit of Rule 4(a) is to promote finality."). There is no dispute that judgment in this case entered on March 31, 2009, that Plaintiff's time to file a notice of appeal pursuant to Fed. R. App. P. 4(a)(1) expired on April 30, 2009, and that no Notice of Appeal was timely filed.

Federal Rule of Appellate Procedure 4(a)(5) provides that the district court "may extend the time to file a notice of appeal" if the moving party "shows excusable neglect or good cause."[2] As the Advisory Committee Notes to Fed. R. App. P. 4(a)(5) explain:

> The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant. The good cause standard applies in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually occasioned by something not within the control of the movant.

---

[2] Grant or denial of a Fed. R. App. P. 4(a)(5) motion is committed to the discretion of the district court. *See Dennett v. Central Intelligence Agency*, 252 Fed. Appx. 343 (2d Cir. 2007); *In re Johns-Manville Corp.*, 476 F.3d 118, 124 (2d Cir. 2007); *Silvanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 363-4 (2d Cir. 2003).

3

*See also, e.g., Neishols v. City of New York*, 2003 WL 22990083 (S.D.N.Y. 2003) (articulating Advisory Committee distinction between "excusable neglect" and "good cause"); *Myers v. New York City Human Rights Commission*, 2006 WL 2053317 (S.D.N.Y. 2006) (same); *Chiulli v. Internal Revenue Service*, 2005 WL 2446233 (S.D.N.Y. 2005) (same). While Plaintiff's motion does not differentiate between the two Fed. R. App. P. 4(a)(5) grounds, Plaintiff generally invokes both "good cause and/or excusable neglect" as grounds therefor. *See* Mem. p.5. He has, however, established neither.[3]

Plaintiff's motion plainly fails to show "good cause" for his failure to meet the Fed. R. App. P. 4(a) deadline. Mutlu's counsel Akin & Smith LLC does not suggest that it was not timely aware of the Court's Dismissal Order, or of the clerk's entry of Judgment, both of which issued on March 31, 2009—nor could it, as ECF docket entries plainly indicate that these filings were electronically transmitted to Plaintiff's counsel on that date. Notwithstanding counsel's timely awareness, Plaintiff's motion papers vaguely suggest that Plaintiff himself only "recently" received word of the Court's Dismissal Order (*see* Mem. pp.1, 2), and not "until it was too late to file a Notice of Appeal" (*see* Mutlu Aff. ¶ 2). But neither Plaintiff nor his counsel even attempt to shed any light upon such obvious issues—critical to the "good cause" inquiry under Fed. R. App. P. 4(a)(5)—as when Plaintiff first learned of the Dismissal Order; why word of the Dismissal Order had not, or could not, reach him sooner; or what steps had been taken by his counsel to bring the Court's Dismissal Order to their client's attention in timely fashion. Nor do Plaintiff or his counsel make any attempt to explain why Plaintiff "did not have an opportunity to discuss his case with his counsel until May 4, 2009" (Mem. pp. 1, 2, 4), or what efforts were

---

[3] Plaintiff has submitted three papers in support of his motion. The first, dated and filed May 6, is styled as an "Attorney Declaration and Memorandum of Law" ("Mem."). This document [impermissibly] blends factual averals by Plaintiff's counsel Derek T. Smith, Esq., of the firm of Akin & Smith LLC, with arguments of fact and of law. The second, dated and filed May 13, one week after Plaintiff's motion was filed, is an Affidavit of Plaintiff ("Mutlu Aff."). The third, dated May 13 and filed May 14, purports to be a medical report indicating treatments of Plaintiff's father occurring on unspecified dates in January 2009, April 2009, and July 2009.

undertaken by Plaintiff or his counsel to consult, by telephone, e-mail, or otherwise, on a timetable that would have allowed Plaintiff to direct his attorneys' timely filing of a Notice of Appeal on his behalf. Plaintiff's absent showing on these points hardly establishes that his failure to appeal in compliance with Fed. R. App. P. 4(a) was "occasioned by something not within [his] control," such that there is "good cause" for late filing.

At essence, then, Plaintiff's sole argument for "good cause" is the mere fact of his presence in Istanbul, Turkey, since early March of 2009. Mutlu Aff. ¶ 2. But given that his counsel was timely aware of entry of Judgment, and that Plaintiff and his counsel apparently have maintained some means of communication in Plaintiff's continued absence (*see* Mem. pp. 1, 2, 4, alluding to May 4 discussion between Plaintiff and his counsel), Plaintiff's physical presence in Turkey simply does not explain why Plaintiff, through his counsel, *could not* have filed a Notice of Appeal on or before April 30. While Plaintiff's stay abroad may have been caused by circumstances beyond his control, there is nothing in the record to suggest that the failure of Plaintiff and/or his counsel to timely commence an appeal was attributable to circumstances beyond the control of either. Fed. R. App. P. 4(a)(5)'s "good cause" standard, accordingly, has not been met. *See, e.g., Bass v. NYNEX*, 2004 WL 2674633 (S.D.N.Y. 2004) (notwithstanding party's busy travel schedule, his failure to "confer[] with his attorney and approv[e] an appeal, over the telephone" does not constitute good cause); *Chiulli v. Internal Revenue Service*, 2005 WL 2446233 (S.D.N.Y. 2005) (because delay in appealing was caused by "something within their control"—party's travel schedule—no "good cause" was shown).

Nor has Plaintiff established "excusable neglect" such as could justify late filing of a notice of appeal pursuant to Fed. R. App. P. 4(a)(5). The Second Circuit, in determining when neglect is "excusable," has taken a "hard line" approach pursuant to which "substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law."

5

*Silvanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 367-8 (2d Cir. 2003) (observing in the context of Fed. R. App. P. 4(a) deadlines that "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced").

Excusable neglect involves "an equitable determination that should incorporate all relevant factors including 'the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501 (2d Cir. 1994) (quoting *Pioneer Investment Servs. Co. v. Brunswick Assocs. LP*, 507 U.S. 380, 395 (1993)). However, where—as here—the "reason for delay is the most prominent factor in a case, it should be given particular weight in the factoral analysis." *Mason v. Schriver*, 1999 WL 498221 (S.D.N.Y. July 12, 1999); *see also Silvanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 363-4 (2d Cir. 2003) ("the reason for the delay, including whether it was within the reasonable control of the movant" is the central *Pioneer* factor); *Jin v. Metropolitan Life Ins. Co.*, 2003 WL 21436211 (S.D.N.Y. 2003) (observing that "[t]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import"). Because the appellate timetables set forth in Federal Rule of Appellate Procedure 4(a) are "entirely clear . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Canfield v. Van Atta Buick / GMC Truck, Inc.*, 127 F.3d 248, 251 (2d Cir. 1997); *see also Mason*, 1999 WL 498221 at *2.

Here, Plaintiff attempts to undo—to JetBlue's prejudice—the certainty and finality realized on April 30, 2009, when the Fed. R. App. P. 4(a)(1) deadline passed without an appeal of the Court's Dismissal Order. Although Plaintiff can point to no intervening change in the governing law such as would call a single aspect of the Court's Dismissal Order into question, JetBlue is now faced with the prejudicial prospect of further indefinite delays in the final

6

resolution of Plaintiff's meritless claims. Moreover, the fact that this motion was filed when the notice of appeal would have been "just 6 days" late (Mem. p.2) does not resolve the question of whether Plaintiff has shown "excusable neglect" such as would justify a late appeal. *See, e.g., Jin v. Metropolitan Life Ins. Co.*, 2003 WL 21436211 *4 (S.D.N.Y. 2003) (denying Fed. R. App. P. 4(a)(5) motion where notice of appeal was one day late, and collecting authority for same). Indeed, Plaintiff appears to request that his time be extended indefinitely to "giv[e] him an opportunity to find counsel," because "he has not had an opportunity to meet and/or discuss this case with any other law firm that may agree to represent him during the Appeal" and because his current counsel "does not handle Appeals pursuant to [its] retainer agreement." Mem. p.1, 4-5. To the extent Plaintiff suggests that this process of finding substitute counsel has not commenced due to his presence abroad (and it appears he is: *see* Mem. pp.4-5), Plaintiff's statement that he expects to return to New York "in June" (Multlu Aff. ¶ 3) provides no indication of when he intends to commence the process of selecting his counsel, let alone conclude it.

Still more to the point, Plaintiff's motion offers a grab bag of excuses addressed to the third, and dispositive, *Pioneer* factor: "the reason for the delay, including whether it was within the reasonable control of the movant." However, none of Plaintiff's proffered excuses, individually or in combination, approach the level of "excusable neglect" under Fed. R. App. P. 4(a)(5).

Plaintiff's travel situation, and his stated presence in Istanbul for some or all of the appellate period, does not itself constitute "excusable neglect." *See Bass v. NYNEX*, 2004 WL 2674633 (S.D.N.Y. 2004) (plaintiff "offers no reason, credible or otherwise, why his travel schedule would have interfered with the simple act of . . . conferring with his attorney and approving an appeal, over the telephone, if necessary"); *see also, e.g., National Union Fire Ins. Co. of Pittsburgh v. Sun*, 1995 WL 491052 (S.D.N.Y. 1995) (Fed. R. App. P. 4(a)(5) motion

founded on counsel's presence out of country denied); *Mason v. Schriver*, 1999 WL 498221 (S.D.N.Y. July 12, 1999) (same); *Chiulli v. Internal Revenue Service*, 2005 WL 2446233 (S.D.N.Y. 2005) (Fed. R. App. P. 4(a)(5) motion founded on party's travel schedule denied). Nor do difficulties in communication between attorney and client (*see Jin v. Metropolitan Life Ins. Co.*, 2003 WL 21436211 *4 (S.D.N.Y. 2003)), or a need to consult with new appellate counsel (*see Myers v. New York City Human Rights Commission*, 2006 WL 2053317 (S.D.N.Y. 2006)), or even Plaintiff's claimed lack of timely knowledge of the order to be appealed from (*see United States ex rel. McAllan v. City of New York*, 248 F.3d 48 (2d Cir. 2001)), satisfy Fed. R. App. P. 4(a)(5)'s strict standards of "excusable neglect."

Moreover, as detailed above, while Plaintiff's motion papers repeatedly state that Plaintiff was in Istanbul throughout the pendency of the Fed. R. App. P. 4(a) period, Plaintiff makes no attempt to show how his and/or his counsel's apparently ineffective communication regarding entry of judgment, appellate deadlines, and appellate intentions was beyond the "reasonable control" of either. Indeed, Plaintiff's motion leaves many critical elements of such communication (or lack thereof) shrouded in silence, including such matters as: (a) when and how Plaintiff "recently" became aware of the Court's Dismissal Order; (b) what efforts were undertaken by Plaintiff's counsel to bring the Dismissal Order to Plaintiff's attention, and when; (c) whether Plaintiff was aware of the Fed. R. App. P. 4(a) appellate deadline in advance of its passage, and if not, what efforts were undertaken by Plaintiff's counsel to bring the deadline to Plaintiff's attention; (d) whether, and when, Plaintiff and his counsel discussed the Dismissal Order and the possibility of appeal in advance of the alleged May 4, 2009, conversation in which Plaintiff conveyed his intention to appeal; and (e) what efforts, if any, Plaintiff undertook to locate appellate counsel in advance of the April 30 deadline for filing of a Notice of Appeal. Indeed, Plaintiff makes no showing, in evidentiary form or otherwise, of *anything* that occurred

between entry of judgment on March 31, 2009, and expiration of the Fed. R. App. P. 4(a)(1) period on April 30, 2009. This patently deficient showing simply cannot establish "excusable neglect" under Fed. R. App. P 4(a)(5).

## CONCLUSION

For the foregoing reasons, JetBlue Airways Corporation respectfully submits that the Court should exercise its discretion to deny Plaintiff's Fed. R. App. P. 4(a)(5) motion for an extension of time to allow him to file an untimely Notice of Appeal.

Dated: New York, New York
      May 14, 2009

                              Respectfully submitted,

                              HOLLAND & KNIGHT LLP

                        By: _____
                              Christopher G. Kelly
                              Robert J. Burns
                              195 Broadway
                              New York, New York  10007
                              Phone No. (212) 513-3200
                              Fax No. (212) 385-9010

                              Attorneys for Defendant
                              JETBLUE AIRWAYS CORPORATION

# 5390000_v1